UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.  Case No.:   3:19cr032/MCR

TIMOTHY J. SMITH.
_____/

## ORDER

Defendant Timothy J. Smith is set for resentencing on one count of extortion, in violation of 18 U.S.C. § 875(d), on August 24, 2023.  There is a dispute between the parties regarding the appropriate guideline section to use in calculating Smith's Guidelines sentencing range.  More specifically, the United States Probation Office and Smith believe the correct guideline is U.S.S.G. § 2B3.3, which governs blackmail and similar forms of extortion.  The Government objects, arguing that § 2B2.2, the guideline for extortion by force or threat of injury or serious damage, applies.[1]  On consideration, the Court finds that § 2B3.3 is the appropriate guideline in Smith's case, and overrules the Government's objection.

To correctly determine the applicable offense guideline, a sentencing court must first consult the Statutory Index set forth as Appendix A in the Guidelines Manual, which specifies the offense guideline section(s) in Chapter Two (Offense

---

[1] The base offense level under U.S.S.G. § 2B3.2 is 18, whereas the base offense level under § 2B3.3 is 9.

Conduct) applicable to the defendant's statute of conviction. *See United States v. Saavedra*, 148 F.3d 1311, 1315 (11th Cir. 1998); U.S.S.G. § 1B1.2. Where, as here, the Index references more than one guideline for a particular statute, then the court must "apply the guideline section most appropriate for the offense conduct charged in the count of which the defendant was convicted." *United States v. Belfast*, 611 F.3d 783, 824 (11th Cir. 2010) (internal marks omitted); U.S.S.G. app. A.

Here, Appendix A of the Guidelines Manual specifies § 2B3.2 (extortion by force or threat of injury or serious damage) and § 2B3.3 (blackmail and other similar forms of extortion) as the two guideline sections applicable to Smith's statute of conviction, 18 U.S.C. § 875(d). Application Note 2 to § 2B3.2 provides that

> [t]his guideline applies if there was any threat, express or implied, that reasonably could be interpreted as one to injure a person or physically damage property, or any comparably serious threat, such as to drive an enterprise out of business. Even if the threat does not in itself imply violence, the possibility of violence or serious adverse consequences may be inferred from the circumstances of the threat or the reputation of the person making it. An ambiguous threat, such as "pay up or else," or a threat to cause labor problems, ordinarily should be treated under [§ 2B3.2].

In contrast, § 2B3.3 "applies only to blackmail and similar forms of extortion where there clearly is no threat of violence to person or property." U.S.S.G. 2B3.3 cmt. n.1. With respect to offenses involving economic harms, the difference between the two sections lies not with the "absolute magnitude of the threat" but rather in the severity of the economic threat to the particular victim. *See United States v. Tobin*,

155 F.3d 636, 645 (3d Cir. 1998). Every circuit court case affirming the application of § 2B3.2 in the enterprise context involved circumstances where the action threatened by the defendant may have crippled or devastated some aspect, if not the entirety, of the victim's business. *See, e.g.*, *United States v. Mathis*, 186 Fed. App'x 971, 978 (11th Cir. 2006) (affirming application of § 2B3.2 where defendant elected official "impliedly threatened…to drive the [victim's] lounge out of business" and caused "some injury" by depriving the lounge of its liquor license); *United States v. Douglas*, 634 F.3d 852, 862-63 (6th Cir. 2011) (same where defendant union representatives' threat to indefinitely "prolong an already lengthy and costly" strike would have cost automotive manufacturer victim millions of dollars per day and might have "crippled or ruined" an automotive plant); *Tobin*, 155 F.3d at 643-44 (same where victim rock band "would have faced the reasonable probability of its demise" if defendant "had carried out the destructive course of action that she threatened (and indeed, implemented to a certain extent)"); *United States v. Penn*, 966 F.2d 55, 56-57 (2d Cir. 1992) (same where defendant's "explicit and implicit threats of serious economic injury" were supported by "ample evidence" justifying victim's concern that, if carried out, the threats "might drive [his] service station out of business"); *United States v. Williams*, 952 F.2d 1504, 1514 (6th Cir. 1991) (same where defendant impliedly threatened "that, unless payments were forthcoming, [necessary] rezoning [of real property] would never take place," and the victim land

developers "would suffer a devastating economic loss" as a result); *see also United States v. Frost*, 61 F.3d 1518, 1528-29 (11th Cir. 1995) (holding that § 2B3.3, rather than § 2B3.2, applied where defendants threatened to give compromising video to victim's wife unless victim resigned from city council because "[t]he threatened conduct…was non-violent; no physical threat was made, and any economic threat flowing from the potential damage to the [victim's] reputation]…was not so severe as to threaten the existence of [the victim] or the city council"); *United States v. Inigo*, 925 F.2d 641, 658-69 (3d Cir. 1991) (holding that textile workers' threat to compete with a multi-billion dollar corporation in one of its manufacturing areas unless they were paid $10 million dollars was not "a physical threat or an economic threat so severe as to threaten the existence of the victim"; therefore, the blackmail guideline, § 2B3.3, rather than the extortion guideline, § 2B3.2, applied).

The offense conduct charged in Smith's sole count of conviction involved a fairly narrow and specific threat. Briefly, the threatened action here was to republish Smith's online offers to crosscheck fishing coordinates previously purchased by third-parties from StrikeLines against the company's master sales lists, and to replace coordinates that had been resold or reoffered for sale with new and unique coordinates from the lists.[2] *See* PSR, ECF No. 145 at ¶¶ 15, 18; *United States v.*

---

[2] More specifically, Smith posted publicly on local online fishing groups that he had obtained StrikeLines' master list of private reef coordinates and invited anyone who had "legally" purchased coordinates from StrikeLines to "direct message" him to determine whether their

Case No. 3:19cr032/MCR

*Smith*, 22 F. 4th 1236, 1245 (11th Cir. 2022).  Obviously, this threat did not involve violence and could not be reasonably interpreted as a threat to physically damage any property.  *See* § 2B3.2 app. n.2.  There was no evidence of actual loss in this case, *see* PSR ¶ 34, and whatever Smith's intent or personal animosity about StrikeLines' business model and commercialization of fishing coordinates, he never actually threatened to publish or otherwise release the company's master list of coordinates to anyone; indeed, he affirmatively told StrikeLines' owner that he had not and would not "distribute that list in any way." *See* PSR at ¶ 18.  Thus, Smith's offense conduct—and again, it is "the offense conduct charged in the count of [conviction]" that controls, *Belfast*, 611 F.3d at 824—was limited to potentially sharing *discrete* coordinates with *specific* individuals who met certain criteria.  The reputational and/or economic threat posed by that narrowly charged conduct simply does not rise to the level of severity required for application for § 2B3.2 under relevant precedent, at least not on the instant record.³  *See, e.g.*, *Mathis*, 186 Fed.

---

purchased coordinates had been resold or reoffered for sale by StrikeLines, and if they had, Smith would give them "the option to have [their] spots moved." *See* PSR, ECF No. 145 at ¶ 15.  After StrikeLines' owner told Smith via text message that the online posts were "creating a lot of trouble" and "causing actual harm to [his] reputation and [his] livelihood," Smith agreed to take down the posts in exchange for deep grouper coordinates.  *See id*. at ¶¶ 15, 18; *see also United States v. Smith*, 22 F. 4th 1236, 1245 (11th Cir. 2022).  When Smith did not receive deep grouper coordinates the next day, he texted that the "posts were going back up." *Id*.

³ The Court thus retracts its remarks at the prior sentencing hearing about the nature of the potential threat to StrikeLines, which remarks were not factual findings, were not made in the context of any legal determination for Guidelines purposes, and were based on a broader swath of conduct than may be properly considered in determining a defendant's base offense level.  The offense conduct for purposes of the instant Guidelines dispute did not involve a threat "to destroy

Page 6 of 6

App'x at 978; *Frost*, 61 F.3d at 1528-29; *Douglas*, 634 F.3d at 862-63; *Tobin*, 155 F.3d at 643-44; *Penn*, 966 F.2d at 56-57; *Inigo*, 925 F.2d at 659; *Williams*, 952 F.2d at 1514; *see also* U.S.S.G. § 2B3.2 app. n.2 (stating that § 2B3.2 applies to "any threat, express or implied, that reasonably could be interpreted as one to...drive an enterprise out of business"). Therefore, the Court finds § 2B3.3 is "the guideline section most appropriate for" Smith's conduct. *Belfast*, 611 F.3d at 824. Accordingly, the Government's objection to the application of § 2B3.3 is **OVERRULED**.

**SO ORDERED**, on this 23rd day of August, 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

the business of the victims if the victims did not give Smith what he demanded." *See* ECF No. 139 at 2. In fact, Smith said, "I have no intentions of hurting you or your livelihood. You have my word I have not nor will distribute that list in any way." *See* PSR ¶ 18. While it is true that Smith's offense conduct presented the potential for certain economic effects, there was never a threat to "destroy" StrikeLines.